## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF ONONDAGA

| | |
|---|---|
| DIANNA CONLEY, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　-against-<br><br>EMPOWER FEDERAL CREDIT UNION,<br><br>　　　　　　　　　　Defendant. | Index No.:<br><br>**SUMMONS**<br><br>Plaintiffs designate ONONDAGA COUNTY as the place of trial<br><br>The basis of venue is: RESIDENCE OF DEFENDANTS |

To the above named Defendant:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's Attorney within twenty days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: April 27, 2021
　　　　New York, New York

**BURSOR & FISHER, P.A.**

By: 　_/s/ Joseph I. Marchese_
　　　　Joseph I. Marchese

Joseph I. Marchese
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: jmarchese@bursor.com

*Attorney for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONONDAGA

| | |
|---|---|
| DIANNA CONLEY, on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>    -against-<br><br>EMPOWER FEDERAL CREDIT UNION,<br><br>                      Defendant. | Index No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dianna Conley, ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Empower Federal Credit Union ("Empower" or "Defendant"), based upon personal knowledge with respect to herself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

**INTRODUCTION**

1. This is a civil action seeking monetary damages and restitution from defendant Empower Federal Credit ("Empower"), arising from its practices of assessing "overdraft fees" (or "OD Fees") to consumer deposit accounts that were never even overdrawn.[1]

2. Besides being deceptive, unfair and unconscionable, these practices breach contractual promises that Empower made to all accountholders—namely, that it would charge OD Fees only as a result of transactions that actually overdraw an account.

3. Specifically, Empower intentionally provides its members with an opt-in

---
[1] Empower refers to its overdraft fees as "NSF/Courtesy Pay Fees" in account statements.

2

disclosure which purports to inform what they "Need[s] to Know about Overdraft and Overdraft Fees," but that document provides ambiguous and inaccurate language to describe under what circumstances a customer is subject to an overdraft fee.

4. Specifically, the opt-in disclosure states that "an overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway."

5. Nonetheless, as happened to Plaintiff here, Empower regularly charges OD Fees to its consumer deposit accounts even where they are not overdrawn.

6. Plaintiff was repeatedly charged OD Fees on routine transactions, even though, according to the monthly account statements prepared by Empower, her account balance never went into the negative for the supposed overdraft event. By definition, then, there were always funds to "cover" the full amount of those transactions—yet Empower assessed an OD Fee on them anyway.

7. Regulation E[2] requires Defendant Empower to obtain informed consent, by way of a written standalone document that fully and accurately describes in an easily understandable way its overdraft services, before charging accountholders a fee for covering certain overdraft transactions. Because of the substantial harm to customers of significant overdraft fees on relatively small debit card and ATM transactions, financial institutions are required to put all the important overdraft information in one document that is clear and easily understood. Financial institutions are not permitted to circumvent this requirement by reference to, or reliance on their account agreements, disclosures, or marketing materials. Regulation E expressly requires a financial institution to include all the relevant terms of its overdraft program within the four corners of the document, creating a separate agreement with accountholders regarding overdraft

---

[2] Federal Reserve Regulation E, 12 C.F.R. § 1005.1, *et seq.* (Hereinafter, "Regulation E").

policies. Thus, Empower's opt-in disclosure which purports to inform account holders what they "Need[s] to Know about Overdraft and Overdraft Fees," is the operative and sole document relevant to Plaintiff's claim.

8. In short, Empower is not authorized by this contract to charge OD Fees on transactions that have not overdrawn an account. But Empower nonetheless has done so and continues to do so, in breach of its contract with its account holders.

9. Plaintiff and numerous other Empower customers have suffered monetary damages from Empower's practices. On behalf of herself and the putative classes, Plaintiff seeks damages, restitution and injunctive relief for Empower's breaches of contract.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action as a court of general jurisdiction.

11. This Court has personal jurisdiction over the Defendant because Defendant maintains their principal place of business in New York and in this County.

12. Venue is proper in this district pursuant to NY CPLR § 503 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this County and because Defendant maintains their principal place of business in this County.

## PARTIES

13. Plaintiff Dianna Conley is a citizen of New York, residing in Syracuse, New York. Plaintiff has a personal checking account with Empower, which is governed by Empower's aforementioned opt-in disclosure.

14. Defendant Empower is and has been a credit union with its headquarters located in Syracuse, New York, and branches throughout New York state. Among other things,

4

Empower is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative class and subclass, in the state of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15. Empower issues debit cards to its checking account customers, including Plaintiff, which allow its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

16. Pursuant to its standard Overdraft Disclosure, Empower charges OD Fees (currently in the amount of $25.00 each) for debit card and other types of transactions that purportedly result in an overdraft of a personal checking account.

### A. Empower Makes Important Contractual Promises To Its Account Holders

17. Plaintiff and the putative class opted into Empower's "Debit Card Courtesy Pay" which is how Empower describes it overdraft system. A reasonable consumer reading a disclosure agreement that requires a signature or acknowledgement, and only relates to overdrafts and overdraft fees and represents that it contains information the customer needs to know about overdrafts and overdraft fees, would rely on the opt-in disclosure agreement without supplementing that knowledge with reference to other marketing materials and or account agreement language relating to overdrafts. In plain, clear, and simple language on the "Courtesy Pay" information page on Empower's website, Empower informs its account holders that

> The federal government requires all financial institutions to request permission from their members/customers when offering overdraft services on ATM and everyday debit card transactions. Empower's Debit Card Courtesy Pay can only be offered with your permission.[3]

18. The opt-in disclosure agreement explains that "an overdraft occurs when you do

---

[3] https://www.empowerfcu.com/Personal/Services/Courtesy-Pay

not have enough money in your account to cover a transaction, but we pay it anyway."[4] The agreement makes no reference to any description of how the credit union's internal hold policies affect the balance. The opt-in disclosure agreement instead only explains that an overdraft occurs when there is not enough "money in [the] account."

19. Here, Empower failed to accurately, clearly, and in an easily understandable way identify the balance Empower uses to assess overdraft fees in the standalone opt-in disclosure agreement. And as previously discussed, the standalone opt-in disclosure agreement is the operative and sole document governing OD fees under Regulation E. As such, by charging customers OD fees on transactions where there was "enough money in [their] account to cover [the] transaction," Empower breached its contract with its customers that an overdraft only occurs "when you do not have enough money in your account to cover a transaction, but we pay it anyway."

    **B.    Empower's Conduct Breaches The Account Agreement With Its Account Holders**

20. At all relevant times, the Defendant knew or should have known, that in order to legally charge its customers overdraft fees, it was required to first obtain affirmative consent from the customer using an opt-in disclosure agreement that complied with Regulation E.

21. At all relevant times, the Defendant knew or should have known Regulation E expressly requires a financial institution to include all the relevant terms of its overdraft program within the four corners of the document, creating a separate agreement with accountholders regarding overdraft policies.

22. At all relevant times, Defendant used an identical opt-in disclosure agreement with Plaintiff and all putative class members that defined an overdraft as occurring "when you do

---

[4] *Id.*

not have enough money in your account to cover a transaction, but we pay it anyway."

23. This definition of overdraft would disclose and be interpreted by reasonable customers to mean as follows: (1) "not enough money in your account" means the amount of money on ledger in the account; (2) to "cover a transaction" means that the overdraft decision is made at time of posting and payment; and (3) "we pay it anyway" means that the Defendant has advanced or loaned the customer money to pay the transaction. However, because it appears Defendant determines overdraft fees based on the "available balance" that factors in credit and debit holds, approximately 10-20% of overdraft fees are assessed on transactions when there was money in the account to cover the transaction at the time it was posted and paid, and Defendant did not advance or loan the customer any money to pay the transaction.

24. At all relevant times, Defendant knew it was using the available balance to assess overdraft fees, and further knew or should have known that as a stand-alone document, the opt-in disclosure agreement was not providing an accurate, clear and easily understandable definition of an overdraft when it identified an overdraft as "when you do not have enough money in your account to cover a transaction, but we pay it anyway."

25. Thus, by charging overdraft fees when there was "enough money in [customers'] account[s] to cover a transaction" Empower breached its contract with its customers.

C. Plaintiff's Experience

26. Plaintiff has one checking account with Empower, which is governed by Empower's Account Agreement and related documents.

27. On numerous occasions, including but not limited to the instance below, Plaintiff was assessed an OD Fee in the amount of $25.00, despite that her account never went negative even after the transaction that supposedly caused the OD Fee was posted.

28. By way of example, on February 22, 2021, Plaintiff was charged a $25.00 OD Fee on a transaction that did not overdraw her account.

29. This OD Fee was charged on a $50.00 Point of Sale Withdrawal using the Cash App that was made when Plaintiff's balance was $54.32. After this withdrawal was subtracted from her account, she was left with $4.32 to which Defendant then subtracted an additional OD Fee of $25.00 despite Plaintiff's account having sufficient funds to cover the transaction.

| POSTED | | |
|---|---|---|
| NSF / Courtesy Pay Fee CASH APP*TRAVIS █ CAUS<br>22 FEB 2021 | -$25.00 | -$20.68 |
| Point Of Sale Withdrawal CASH APP*TRAVIS █ CAUS<br>22 FEB 2021 | -$50.00 | $4.32 |
| Deposit #XX█ # Transfer From XX█<br>21 FEB 2021 | $34.07 | $54.32 |

30. Plaintiff at all times had sufficient funds to cover the foregoing transaction (and numerous other transactions like them that occurred during the past five years) that resulted in improper OD Fees.

31. Because the foregoing OD Fee was charged even though Plaintiff's account balance was not overdrawn by the transactions at issue, Empower assessed the fees in violation of its own opt-in disclosure agreement with Plaintiff.

**CLASS ALLEGATIONS**

32. Plaintiff brings this action on behalf of themselves and all others similarly situated pursuant to NY CPLR 901. This action satisfies the numerosity, commonality, typicality,

adequacy, predominance and superiority requirements of NY CPLR 901 *et. seq*.

33. The proposed class is defined as:

**Class 1: The Nationwide "Sufficient Funds Class"**

All Empower checking account holders in the United States who, within the applicable statute of limitation period, were charged one or more OD Fee as a result of a transaction that did not overdraw an account.

**Subclass 1: The New York "Sufficient Funds Subclass"**

All Empower checking account holders in the State of New York who, within the applicable statute of limitation period, were charged one or more OD Fee as a result of a transaction that did not overdraw an account.

(Collectively, the "Classes.")

34. Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

35. Specifically excluded from the Classes are Empower, its parents, subsidiaries, affiliates, officers and directors, any entity in which Empower has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

36. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Empower's records.

37. The claims of the representative plaintiff are typical of the claims of the Classes in that the representative plaintiff, like all members of the Classes, was charged overdraft fees on transactions that were authorized into a positive available balance. The representative plaintiff,

like all members of the Classes, has been damaged by Empower's misconduct in that she has been assessed unfair and unconscionable overdraft fees. Furthermore, the factual basis of Empower's misconduct is common to all members of the Classes, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

38. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

39. The questions of law and fact common to the Classes include:

    a. Whether Empower charged overdraft fees on transactions when those transactions did not overdraw accounts;

    b. Whether Empower breached its own contract by charging overdraft fees on transactions when those transactions did not overdraw accounts;

    c. Whether Empowers charging overdraft fees on transactions when those transactions did not overdraw accounts violated NY GBL § 349;

    d. The proper method or methods by which to measure damages; and

    e. The declaratory, injunctive, and other equitable relief to which the Classes are entitled.

40. Ms. Conley is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Ms. Conley is an adequate representative and will fairly and adequately protect the interests of the Classes.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Empower, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Classes will continue to suffer losses and Empower's misconduct will proceed without remedy.

42. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

43. Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all members of the Classes, is at risk of additional overdraft fees on transactions that do not overdraw her account. Plaintiff and the members of the Classes are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Empower from continuing to commit its unfair and illegal actions.

44. Empower has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### Breach Of Contract
### (On Behalf Of The Sufficient Funds Class And New York Subclass)

45. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

46. Plaintiff, and all members of the relevant classes, contracted with Empower for bank account deposit, checking, ATM, and debit card services.

47. At all relevant times, the Defendant knew or should have known Regulation E expressly requires a financial institution to include all the relevant terms of its overdraft program within the four corners of an opt-in document, an agreement with accountholders regarding overdraft policies separate from its general account agreement documents.

48. Thus, Defendant's contract with account holders with regard to overdraft fees is contained solely within the four corners of the opt-in disclosure agreement.

49. Empower breached promises made to Plaintiff and all members of the proposed relevant classes in their opt-in disclosure agreement when, as described herein, Empower charged overdraft fees as a result of transactions that did not overdraw a checking account.

50. Plaintiff and all members of the relevant classes have performed all, or substantially all, of the obligations imposed on them under the contract.

51. Plaintiff and all members of the proposed Sufficient Funds Class have sustained damages as a result of Empower's breach of the contract.

### COUNT II
### Violation of NY GBL § 349
### (On Behalf Of The Sufficient Funds Class And New York Subclass)

52. The preceding allegations are incorporated by reference and re-alleged as if fully

set forth herein.

53. NY GBL § 349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

54. As alleged herein, Defendant engaged in deceptive acts and practices in the form of material misrepresentations and misleading statements in their opt-in disclosure agreement, that an overdraft "occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." A reasonable interpretation of this statement is that it means actual money in the account (actual balance) rather than money in the account that is held for future expenses. However, Defendant failed to disclose in their opt-in disclosure agreement that it would assess overdraft fees even in instances when the balance in a customer's account shows there is enough money in account to cover a transaction, which renders Defendant's statement in its opt-in disclosure agreement materially false and/or misleading.

55. Defendant knew or should have known that their acts, practices, statements, policies, correspondences, and representations, as discussed above, were false and likely to deceive and mislead Plaintiff and the Class members.

56. Plaintiff and the Class members have been injured as a result of Defendant's violations of Gen. Bus. Law § 349(a), as they have been charged deceptive overdraft fees.

57. Defendant's deceptive and misleading acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the other members of the Class and has had a broader impact on consumers and the public at large. Instead of disclosing the measure Defendant uses to assess overdrafts, Empower has been unjustly enriched at the expense of consumers by charging deceptive overdraft fees even in instances where

Empower does not use its own funds to cover payments.

58. Thus, Plaintiff and the Class are entitled to pursue claims against Defendants pursuant to Gen. Bus. Law § 349 (h) to redress Defendants' violations of Gen. Bus. Law § 349(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying this action as a class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

(b) For compensatory damages on all applicable claims and in an amount to be proven at trial;

(c) For restitution on all applicable claims and in an amount to be proven at trial;

(d) For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

(e) For an order enjoining the wrongful conduct alleged herein;

(f) For other appropriate injunctive and other equitable relief;

(g) For costs;

(h) For pre-judgment and post-judgment interest as provided by law;

(i) For attorneys' fees under the account contracts, the common fund doctrine, and all other applicable rules and law; and

(j) For such other relief as the court deems just and proper.

14

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  April 27, 2021			Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Joseph I. Marchese*
           Joseph I. Marchese

Joseph I. Marchese
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com

*Attorney for Plaintiff*

15